UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA NILES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 16-cv-1209 (TSC) |
| U.S. CAPITOL POLICE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Lisa Niles, a former police officer with the U.S. Capitol Police ("USCP"), brings this suit challenging her termination, alleging disability discrimination under the Americans with Disabilities Act ("ADA") (Count I), race and sex discrimination under Title VII of the Civil Rights Act of 1964 (Count II), and a violation of her right to Due Process under the Fifth Amendment of the United States Constitution (Count III).  (ECF No. 17 ("Am. Compl.") at ¶¶ 37–54.)  USCP moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Niles' disability discrimination claim for failure to state a claim, or, in the alternative for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  USCP also moves for summary judgement on Niles' race and sex discrimination claims.  Finally, USCP moves to dismiss Niles' due process claim, or, in the alternative for summary judgment.

On March 31, 2019, this court issued an Order **GRANTING** in part, and **DENYING** in part Defendant's motion to dismiss; and **DENYING**, without prejudice, Defendant's motion for summary judgment.  This Memorandum Opinion explains the court's reasons for **DENYING** the motion to dismiss and **DENYING**, without prejudice, the motion for summary judgment with respect to Count I (disability discrimination); **DENYING**, without prejudice, the motion for

1

summary judgment with respect to Count II (race and sex discrimination); and **GRANTING** the motion to dismiss with respect to Count III (violation of due process rights).

I.     **BACKGROUND**[1]

While on duty as a USCP officer in 2005, Niles, who is African American, hit her head on a bike rack, fell to the ground, hitting her head again, and suffered a seizure. (Am. Compl. ¶ 17; ECF No. 23-1 ("Pl.'s Resp.") at 21.) She was transported to the hospital where it was determined that her seizure was caused by the fall and/or a brain tumor. (Am. Compl. ¶¶ 17–18.) Approximately seven years later, in 2012, Niles was promoted to the rank of Sergeant. (*Id.* ¶ 5.)

On or about February 26, 2014, Niles was on an Amtrak train commuting to work when she was accused of taking a "seat check ticket." (*Id.* ¶ 7.) She was unable to produce a ticket because she had obtained oral permission from an Amtrak conductor to ride the train without paying. (*Id.*) Because she did not have a ticket, Niles was sent to Amtrak Police, where she was questioned and warned that she could not board Amtrak trains without a paid ticket or a conductor's permission. (*Id.*) Niles continued to commute on Amtrak as a "courtesy rider" until May 17, 2014. (*Id.* ¶ 8.)

During her Amtrak commute on May 17, 2014, Niles boarded the train after she asked a conductor if she could take a courtesy ride as a law enforcement officer and the conductor nodded. (*Id.* ¶ 9.) A different conductor later "seat-checked" Niles, who explained that she had been given permission to board as a "courtesy rider." (*Id.* ¶ 10.) The conductor said she would not allow Niles a "courtesy ride," and Niles disembarked at the next stop, in Baltimore, Maryland, because she "did not want any problems." (*Id.*) As Niles got off the train in

---

[1] Unless otherwise indicated, the facts are taken from the Amended Complaint, and are assumed to be true for the purposes of deciding USCP's motion to dismiss.

Baltimore, Amtrak Police met her and asked her to follow them to their office. (*Id.* ¶ 11). Once there, they asked for identification, and Niles identified herself as a USCP Officer. (*Id.* ¶ 12.) The police then asked Niles for her credentials and her supervisor's name and phone number, which Niles provided. (*Id.*) After deciding "that she would rather pay the fare in order to avoid any other issues," Niles paid the fare and was allowed to proceed to Washington, D.C. (*Id.*)

Three days later, Amtrak Police informed the USCP Office of Professional Responsibility ("OPR") of the two incidents. (*Id.* ¶ 13.) OPR began an investigation, during which Niles "could not and would not" admit that Amtrak Police advised her in February 2014 that she "could face a citation or arrest for theft of services." (*Id.* ¶¶ 7, 14.) Niles also denied that what she had done was illegal and maintained that she had no recollection of the February 2014 incident. (*Id.* ¶ 14.)

The following month, Niles was charged by USCP with violating policies relating to "Conduct Unbecoming" and "Truthfulness." (*Id.* ¶ 16.)

Niles subsequently consulted with Dr. Clifford Reed, because she could not recall the February incident. (*Id.* ¶ 15.) Dr. Reed diagnosed Niles with transient global amnesia ("TGA"), a loss of memory "that manifests itself as a paroxysmal, transient loss of memory function. Immediate recall ability is preserved, as is remote memory, however, patients experience striking loss of memory for recent events and an impaired ability to retain new information temporary [sic]." (*Id.*) Niles then consulted with another doctor for a second opinion. (ECF No. 23-4 ("Pl.'s Ex. 1") at 16–18.) The second doctor confirmed Dr. Reed's diagnosis and added a diagnosis of "short-term memory loss related to severe stress, depression, [and] anxiety." (*Id.* at 18.)

On February 12, 2015, the Disciplinary Review Board ("DRB") held a hearing at which Niles presented medical evidence and Dr. Reed testified about the TGA diagnosis. (Am. Compl. ¶¶ 20, 32–33.) Niles was found guilty of both charges. (*Id.* ¶ 20.)

The DRB subsequently held a penalty assessment hearing and issued a report recommending that Niles be demoted due to the Conduct Unbecoming charge and terminated due to the Truthfulness charge. (*Id.* ¶ 21.) The report recommended that in the event the termination was mitigated and the demotion was held in abeyance, there should be further investigation of possible additional charges. (*Id.* ¶ 22.)

On August 24, 2015, after being given the option to resign or be terminated, Niles was terminated. (*Id.* ¶ 24.) She alleges that USCP treated white male officers who engaged in misconduct more favorably and did not subject them to termination. (*Id.* ¶ 28.) Specifically, she alleges:

> Upon information and belief, some white male officers were charged with filing false overtime claims from the unit that provided dignitary protective security for House and Senate leaders and other lawmakers. None of the white male officers were terminated. Upon information and belief, some white male officers left the [sic] service weapon in the public bathroom without any punishment. A white male officer was reprimanded for pornography. Some male officer had [an] adulterous relationship, but there was no punishment at all. None of these individuals were being terminated.

(*Id.*)

## II.     STANDARDS OF REVIEW

### A.     Rule 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when it alleges sufficient facts to permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). When considering a defendant's motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979), *aff'd on reh'g*, 628 F.2d 199 (D.C. Cir. 1980) (internal quotations omitted) ("The complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."). In employment discrimination cases, although a plaintiff must establish a plausible claim for relief, she does not need to "plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted).

B.  **Rule 56**

Summary judgment is appropriate where there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . .' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The nonmoving party, in response, must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### III. ANALYSIS

**A. Motion to Dismiss Disability Discrimination Claim[2]**

USCP argues that Niles has failed to allege facts demonstrating that she has a qualifying disability, and even if Niles has sufficiently alleged that she has a substantially limiting impairment, she has failed to allege facts that suggest she was capable of working as a police officer with TGA. (ECF No. 21-1 ("Def.'s Mot. to Dismiss and for Summ. J.") at 7–10.)

Under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in order to make out a prima facie case of discrimination under the ADA, a plaintiff must show that she was disabled within the meaning of the ADA, she was qualified for the position at issue with or without a reasonable accommodation, and she suffered an adverse employment action because of her disability. *Giles v. Transit Emp. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015). A person is disabled if she: (1) has a physical or mental

---

[2] The Congressional Accountability Act extends the protections of Title I of the ADA to certain legislative branch employees. *See* 2 U.S.C. § 1311(a) (2018).

6

impairment that substantially limits one or more of her major life activities, (2) has a record of such an impairment, or (3) has been regarded as having such an impairment. *See* 42 U.S.C. § 12102(1)(A)–(C) (2018). While Congress amended the ADA in 2008 to broaden coverage and relax the standards under which an individual is deemed disabled, 42 U.S.C. § 12102(4), a plaintiff must still plead enough facts to show she has a disability to survive a motion to dismiss. *Dave v. Lanier*, 681 F.Supp.2d 68, 74 (D.D.C. 2010).

USCP argues that Niles' Amended Complaint is devoid of facts suggesting that TGA limited Niles' abilities in any way other than preventing her from remembering the Amtrak officials' version of the facts. (Def.'s Mot. to Dismiss and for Summ. J. at 7–9.) Moreover, even if Niles actually cannot remember the Amtrak official's warning, that isolated event does not amount to a qualifying disability. (*Id.* at 9.) USCP's arguments are unpersuasive at this stage.

Although Niles' Amended Complaint goes into detail about her inability to recall one event—the February 2014 incident—the Amended Complaint also asserts facts that could be construed as alleging that TGA symptoms may manifest on more than one occasion. For example, the Amended Complaint alleges that TGA causes "striking loss of memory for recent *events*." (Am. Compl. ¶ 15 (emphasis added).) The use of the plural "events" implies that Niles' memory loss has happened (or will happen) on more than one occasion, and is enough to establish a plausible claim that she suffered an impairment and that the impairment substantially limited a major life activity.[3] Major life activities include reading, concentrating, thinking, and communicating, 42 U.S.C. § 12102(2)(A), all of which may be negatively or substantially

---

[3] Niles claims she consulted a doctor because she was concerned that she had "no recollection whatsoever of the February incident." (Am. Compl. ¶ 15.) This allegation appears to conflict with other allegations regarding the February incident, *see, e.g.*, Am. Compl. ¶¶ 7–12, but at this juncture, the court will view the facts in the light most favorable to her.

impacted by memory loss. *See Eshelman v. Agere Sys., Inc.,* 554 F.3d 426, 434 (3d. Cir. 2009) (holding that thinking constitutes a major life activity, which can be affected by memory loss) (citation omitted).

USCP next argues that Niles has not pleaded facts showing that she could perform the "essential functions of her job with or without reasonable accommodation," because memory lapses would impair her ability to carry a gun or recall events. (Def.'s Mot. to Dismiss and for Summ. J. at 9–10.) In response, Niles points to Dr. Reed's characterization of her symptoms, the fact that she neither asked for an accommodation nor indicated that she required an accommodation, and the fact that she worked as a police officer after the February and May 2014 incidents until her removal in August 2015, without complaints regarding her on-the-job performance. (Pl.'s Resp. at 15.) Although Niles may have an arduous time pressing this argument after discovery has been completed, the court finds that she has pleaded sufficient facts to sustain an ADA claim at this time.

"The prima facie case under *McDonnell Douglas*, [] is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, in an employment case, a plaintiff "is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones*, 642 F.3d at 1104. It is plausible that Niles may be able to adduce facts that this form of memory loss permitted her to perform the essential functions of her job with or without a reasonable accommodation, and there is nothing in the Amended Complaint that undermines this proposition. Thus, Niles has pleaded sufficient factual allegations, accepted as true, to survive a motion to dismiss.

**B.    Motion to Dismiss Due Process Claim, or in the Alternative for Summary Judgment**

USCP argues in its motion to dismiss that Niles has failed to plead facts showing that she had a reasonable expectation that she should retain her employment, and that she conceded in her Amended Complaint that she received meaningful due process. (Def.'s Mot. to Dismiss and for Summ. J. at 12–13.) Alternatively, USCP moves for summary judgment because it has proffered records demonstrating that Niles received notice and a meaningful opportunity to be heard. (*Id.* at 19–23.)

To establish a due process violation, a plaintiff must show that she had a protected property interest in her employment, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Colm v. Vance*, 567 F.2d 1125, 1127–28 (D.C. Cir. 1977), and that she was denied notice and an opportunity to be heard, *Loudermill*, 470 U.S. at 546. Here, the court need not address whether Niles had a property interest in her employment because she alleged in her Amended Complaint that she received ample notice and multiple opportunities to be heard.

As a public employee, Niles was "entitled to oral or written notice of the charges against h[er], an explanation of the employer's evidence, and an opportunity to present h[er] side of the story" either "in person or in writing." *Id.* at 546 (citation omitted). Her Amended Complaint concedes that she received just that. Niles states that she received notice on October 1, 2014 that she was charged with Conduct Unbecoming and Truthfulness. (Am. Compl. ¶ 16.) She had over four months to prepare for the DRB hearing, which took place on February 12, 2015. (*Id.* ¶ 20.) Niles alleges that at that hearing, she "presented her medical evidence, of her prior seizure and brain tumor" and Dr. Reed's testimony. (Am. Compl. ¶¶ 20, 32–33.) These allegations do not indicate that Niles suffered a constitutional deprivation of her right to be heard; to the contrary,

9

they establish that she was provided notice of the charges against her, time to prepare a response, and an opportunity to be heard and present evidence in her defense.

Niles identifies two allegations that she argues provide a factual basis for her due process claim. First, she alleges that USCP "failed to consider" her medical evidence when making its decision to terminate her. (Pl.'s Resp. at 17–18.) Second, she claims that USCP considered factors outside the scope of charges and she "had no notice or opportunity to prepare a defense to these factors." (*Id.* at 18.)

Niles' first argument fails because the DRB Hearing transcript and written decision she attached to her opposition to the motion to dismiss refute her assertions in the Amended Complaint. The court cannot accept as true allegations in the Amended Complaint when they are "flatly contradicted" by a document that Plaintiff has incorporated into the record. *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 89 (D.D.C. 2015). Niles' claim that USCP failed to consider her medical evidence in reaching its decision is directly refuted by the DRB hearing transcript, wherein counsel for USCP cross-examined Dr. Reed (*compare* Am. Compl. ¶ 48 *with* ECF No. 23-4 at 2–15); and is refuted by Chief Kim Dine's written decision, in which he grapples with whether her medical condition constitutes a mitigating circumstance, (*compare* Am. Compl. ¶ 48 *with* ECF No. 23-4 at 32–34). In light of Niles' own submissions, the court cannot accept as true the allegation that USCP failed to consider Niles' medical evidence.

Niles' second argument—that USCP considered "factors outside of the scope of charges," and gave her "no notice or opportunity to prepare a defense to these factors" (Pl.'s Resp. at 18)—is similarly unavailing. USCP notified Niles that it was investigating her for "Conduct Unbecoming" and "Truthfulness," then terminated her for "Truthfulness." (Am. Compl. ¶¶ 16, 21; Def.'s Exs. 4–5, 12–13.) Thus, there were no "new charges" for which Niles

needed to defend or prepare to defend. Niles is correct that the DRB stated that other charges may be considered in the event Niles retained her employment. (Am. Compl. ¶ 22; Def.'s Ex. 9 at 14–15.) But because she did not retain her employment, those potential charges were not considered. Accordingly, Niles' due process claim cannot survive, and the court will grant USCP's motion to dismiss.

Moreover, Niles does not dispute[4] that the USCP took the following actions before terminating her:

- Investigated the two incidents by interviewing Amtrak Police and Niles; and drafted a June 27, 2014 report detailing its findings (USCP Report of Investigation, ECF No. 21-2 at 2–8);

- Provided notice of the two charges and potential sanction of termination on October 1, 2014 (USCP Request for Disciplinary Action for Conduct Unbecoming, ECF No. 21-5 and Truthfulness, ECF No. 21-6);

- Conducted a February 12, 2015 DRB Hearing, during which Niles was represented by counsel and permitted to call witnesses, cross-examine USCP witnesses, provide medical information, and present exhibits (DRB Hearing Transcript, ECF No. 21-7);

---

[4] The USCP submitted a Statement of Undisputed Facts, (Def.'s Mot. to Dismiss and for Summ. J. at 15–19), but instead of a response to USCP's facts, Niles submitted a separate Statement of Material Facts in Genuine Dispute ("SOF"). (ECF No. 23-2.) However, none of her "disputed" facts regarding the investigation and subsequent proceedings conflict with USCP's statement of facts. (*See e.g.*, SOF ¶¶ 18, 22, 24–27, 35–37.) Moreover, Niles' SOF did not comply with Federal Rule of Civil Procedure 56 or Local Civil Rule 7 because she cited solely to her Amended Complaint. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); L. Cv. R. 7(h)(1) ("An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."). The court therefore treats the USCP's facts as undisputed. *See id*. ("[T]he Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

- Conducted a February 13, 2015 Penalty Assessment Hearing, during which Niles was represented by counsel, and permitted to present evidence regarding her employment history and in support of penalty mitigation (PAH Hearing Transcript, ECF No. 21-8);

- Provided notice in a March 9, 2015 report that the DRB had determined termination was the appropriate penalty and a March 9, 2015 memorandum advising Niles that she had 15 days to appeal (DRB & PAH Report ECF No. 21-9, Penalty Recommendation Memorandum ECF No. 21-10);

- Notified Niles on July 20, 2015 that USCP Chief Dine—who had considered the record, including a letter of appeal from Niles' attorney—recommended termination (Niles Letter re: Appeal, ECF No. 21-11, Chief Dine's Letter re Termination Recommendation, ECF No. 21-12); and

- Notified Niles on August 19, 2015 that the termination recommendation had been approved and that she would be terminated effective August 24, 2015 (Letter re Termination Approval, ECF No. 21-14).

This undisputed record evidence demonstrates that Niles was given notice of the charges against her and a meaningful opportunity to be heard.

C. **Motion for Summary Judgment on Race, Sex, and, Disability Discrimination Claims**[5]

In moving for summary judgment on Niles' race, sex, and disability discrimination claims, USCP concedes that Niles has made out prima facie cases for race and sex discrimination and reiterates its challenge to Niles' disability claim that this court has already denied. (Def.'s Mot. to Dismiss and for Summ. J. at 24.) USCP argues that it is entitled to judgment as a matter of law because it has presented a valid business reason for its decision to terminate Niles, and Niles cannot show that the decision was pretextual. (*Id.* at 24–28.)

---

[5] The Congressional Accountability Act extends the protections of Title VII to certain legislative branch employees. *See* 2 U.S.C. § 1311(a) (2018).

Discrimination claims brought under the ADA and Title VII are analyzed under the familiar burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (applying the *McDonnell Douglas* framework in Title VII case); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288–89 (D.C. Cir. 1998) (applying the *McDonnell Douglas* framework in an ADA case). Under this framework, the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. *Burdine*, 450 U.S. at 252–53. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Id.* If the defendant meets this burden, then the burden reverts to the plaintiff to offer evidence raising a question of fact as to whether the employer's reason was merely a pretext for discrimination. *Id.* at 253.

Here, USCP claims it had a legitimate, non-discriminatory reason for terminating Niles. (Def.'s Mot. to Dismiss and for Summ. J. at 24–27.) According to USCP, during the investigation of the two Amtrak incidents, Niles was untruthful, which led to her being charged for conduct unbecoming and truthfulness. (*Id.* at 24–25.) Then, an independent disciplinary review officer decided the penalties for each charge, and Niles' commander concurred with and sustained the charges and penalties. (*Id.* at 25.) From that point, Niles was afforded ample opportunity to challenge the charges and penalties during several rounds of the review process; and those conducting the review detailed their findings at each step. (*Id.* at 25–27.) Finally, after several agencies and individuals conducted independent reviews, USCP approved the termination in a non-discriminatory manner. (*Id.* at 27.)

USCP argues that it has satisfied its burden, and Niles cannot show that the decision was pretextual because she failed to show that her comparators engaged in similar conduct. (*Id.* at

13

27–28.)  Niles claims that several white male officers who violated the code of conduct were not terminated for their behavior (*see* Am. Compl. ¶ 28), but USCP argues that Niles has failed to allege that the proffered comparators rode a train without paying or were untruthful when questioned by OPR.  (Def.'s Mot. to Dismiss and for Summ. J. at 27–28.)  In addition, USCP notes that Niles did not allege that any of her proffered comparators suffered from a disability.  (*Id.* at 28.)

USCP is correct that Niles bears the burden of coming forward with affirmative comparator evidence.  *See Liew v. District of Columbia*, 278 F. Supp. 3d 77, 82–83 (D.D.C. 2017) (citations omitted).  However, Niles need not do so in advance of discovery.  *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) ("The burden at the summary judgment stage and at trial is different and substantially more onerous than the pleading burden.  Allegations regarding comparators, racial comments, and pretext obviously strengthen a discrimination complaint, but the evidentiary requirements the dissent identifies are inapplicable at the pleading stage.").  Thus, notwithstanding any difficulties Niles may have locating appropriate comparators, summary judgment is not appropriate at this stage.  Niles should be allowed an opportunity to develop her factual assertions through discovery, including the opportunity to depose the alleged comparators and others not referenced in the complaint.  Accordingly, USCP's motion for summary judgment will be denied.  USCP may renew its arguments after discovery is completed and the court is better positioned to determine whether there is a genuine issue for trial.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is hereby DENIED with respect to Count I and GRANTED with respect to Count III. The motion for summary judgment is hereby DENIED, without prejudice, with respect to Counts I and II.

A corresponding order will issue separately.

Date: April 25, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge